# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF MONTANA

# BILLINGS DIVISION

|  |  |
|---|---|
| FLOYD D. HYNEK,<br><br>                    Plaintiff,<br><br>vs.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social Security,<br><br>                    Defendant. | CV 10-149-BLG-CSO<br><br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |

Plaintiff Floyd D. Hynek [Hynek] initiated this action seeking judicial review of the decision by the Defendant, Commissioner of Social Security [Commissioner], to deny his application for social security disability benefits and disability insurance [disability benefits] under Title II of the Social Security Act, 42 U.S.C. §§ 416 and 423. *Court Doc. 1; Court Doc. 21* at 2. Pursuant to the parties' consent, this case was assigned to the undersigned judge for all further proceedings, including entry of judgment. *Court Doc. 8.*

Now pending are the parties' cross motions for Summary Judgment.  For the reasons stated below, Hynek's motion will be denied and the Commissioner's motion will be granted.

## I.   <u>PROCEDURAL BACKGROUND</u>

Hynek is a 51-year-old U.S. Air force veteran who received disability benefits from the Department of Veterans Affairs [VA] and the Social Security Administration [SSA].  *Tr. at 21, 1464.*  Hynek claimed disability based on a spinal disc condition, asthma, traumatic arthritis, a foot condition, two claims of nerve paralysis, back and neck pain, bilateral arm weakness and numbness, headaches, vision problems, gastrointestinal problems and irritable bowel syndrome, narcolepsy, carpel tunnel, and mental health issues.  *Tr. at 1464, 26-29.*

Hynek filed for disability with the SSA in December 2003.  *Tr. at 458.*  Hynek's application was initially denied, and was denied again on reconsideration in 2004.  *Tr. at 442, 446.*  After a hearing in April 2005, however, ALJ Michael Kilroy approved Hynek for disability benefits in a fully favorable decision dated May 2, 2005.  *Tr. at 21.*  That decision covered the time between October 14, 2003 (Hynek's amended onset date), and May 2, 2005.  *Tr. at 22.*

2

On April 25, 2005, the VA received a call from Mark Guerin, one of Hynek's neighbors, who claimed that Hynek was defrauding the government and was not as disabled as he claimed to be. *Tr. at 1467.* The VA initiated an investigation, which included medical review, surveillance, interviews of Hynek's neighbors and an interview with Hynek. *Tr. 1464-1518.* The VA found that Hynek "is physically active and is believed to have made false applications and statements" in order to receive VA benefits in a "scheme [that] caused VA to pay HYNEK compensation benefit payments in excess of $100,000." *Tr. at 1464.*

The VA forwarded their investigation results to the SSA, which in turn notified Hynek that new evidence received from the Department of Veterans Affairs Office of Inspector General and the Social Security Administration's Office of Inspector General raised serious issues that might affect the previously favorable decision and the claimant's entitlement to Social Security disability benefits. *Tr. at 21.*

At the SSA's request, Hynek appeared with counsel and testified at a hearing in June 2009. *Tr. at 21; 1386-1463.* A medical expert, Dr. Veraldi, and a vocational expert, Mr. Fortune, were also present at the hearing. *Tr. at 1386-1463.* After the hearing, the ALJ issued a new

3

decision, dated September 29, 2009, finding that Hynek committed "similar fault" when he applied for disability benefits and that Hynek was not entitled to the benefits he had received for the time between October 14, 2003, and May 2, 2005. *Tr. 21-60.* Hynek requested review of the ALJ's decision by the Appeals Council, but was denied. *Tr. 11-15.*

## II.    STANDARD OF REVIEW

This Court's review is limited. The Court may set aside the Commissioner's decision only where the decision is not supported by substantial evidence or where the decision is based on legal error. *Ryan v. Commr. of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008); 42 U.S.C. § 405(g). "Substantial evidence is more than a mere scintilla, but less than a preponderance." *Id.* (citing *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n. 1 (9th Cir. 2005) (internal quotations omitted)). "It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks and citation omitted).

This Court must consider the record as a whole, weighing both the evidence that supports and detracts from the Commissioner's conclusion, and cannot affirm the ALJ "by isolating a specific quantum

of supporting evidence." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (internal quotation marks and citation omitted). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Hegel v. Astrue*, 325 Fed.Appx. 580 (9th Cir. 2009)(*citing Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir.1995)).

"Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (internal citation omitted).

## III.     <u>BURDEN OF PROOF</u>

A claimant is disabled for purposes of the Act if: (1) the claimant has a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months, and (2) the impairment or impairments are of such severity that, considering the claimant's age, education, and work experience, the claimant is not only unable to perform previous work, but the claimant cannot "engage in

any other kind of substantial gainful work which exists in the national economy." *Schneider v. Commr.,* 223 F.3d 968, 974 (9th Cir. 2000) (citing 42 U.S.C. § 1382c(a)(3)(A)-(B)); 20 C.F.R. § 416.905(a).

In determining whether a claimant is disabled, the Commissioner follows a five-step sequential evaluation process. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999); 20 C.F.R. §§ 404.1520(a)(4)(I)-(v), 416.920(a)(4)(I)-(v).

1.   The claimant must show that he or she is not currently engaged in substantial gainful activity. *Tackett*, 180 F.3d at 1098.

2.   If not so engaged, the claimant must show that he or she has a severe impairment. *Id.*

3.   The claimant is conclusively presumed disabled if his or her impairments meet or medically equal one contained in the Listing of Impairments described in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (hereafter "Listing of Impairments"). *Id.* If the claimant's impairments do not meet or medically equal one listed in the regulations, the analysis must proceed to the fourth step.

4.    If the claimant is still able to perform his or her past relevant work, he or she is not disabled and the analysis ends here. *Id.* "If the claimant cannot do any work he or she did in the past, then the claimant's case cannot be resolved at [this step] and the evaluation proceeds to the fifth and final step." *Id.* at 1098-99.

5.    If the claimant is unable to perform his or her past relevant work due to a "severe impairment (or because [he or she does] not have any past relevant work)" the court will determine if the claimant is able to make an adjustment to perform other work, in light of his or her residual functional capacity, age, education, and work experience. 20 C.F.R. §§ 404.1520(g), 416.920(g). If an adjustment to other work is possible then the claimant is not disabled. *Tackett*, 180 F.3d at 1099.

The claimant bears the burden of proof at steps one through four, but at the fifth step the Commissioner bears the burden of establishing that there is other work in significant numbers in the national economy that the claimant can perform. *Tackett*, 180 F.3d at 1099. The Commissioner can meet this burden via the testimony of a vocational expert or reference to the Medical-Vocational Guidelines at 20 C.F.R. Pt. 404, Subpt. P, App. 2.; *Tackett,* 180 F.3d at 1099. If the Commissioner is unable to meet this burden, then the claimant is disabled and entitled to benefits. *Tackett,* 180 F.3d at 1099.

## IV.    <u>THE ALJ's OPINION</u>

7

The ALJ first noted that his decision was a reopening and redetermination pursuant to 20 C.F.R. §§ 404.988(A)(c)(1) and 416.1488(c), which allow for reopening a decision at any time if it was obtained by "fraud or similar fault." *Tr. at 21*. The ALJ outlined the standards for determining both disability and similar fault. (*Tr. 22-25*)

In determining that Hynek was no longer eligible for disability benefits, the ALJ followed the applicable sequential evaluation process for redetermination, adding an additional evaluation and determination for similar fault. *Tr. at 21-60*; *Tackett*, 180 F.3d at1098-99. First, the ALJ found that Hynek did not engage in substantial gainful activity between October 14, 2003, and May 2, 2005. *Tr. at 25*. Next, the ALJ determined that Hynek had eight severe impairments and two non-severe impairments. *Tr. at 25-26*.

The severe impairments were: (1) degenerative disc disease of the cervical and lumbar spine; (2) reconstructive surgery of the left knee (ACL tear); (3) carpal tunnel release of the right hand; (4) migraine headaches; (5) history of bunions and bilateral hammertoes; (6) bilateral hip osteoarthritis; (7) dysthymic disorder; (8) panic disorder with agoraphobia. *Tr. at 25*. The ALJ found that Hynek's asthma and

8

hypertension were non-severe.  *Tr. at 25-26*.

The ALJ then inserted into the sequential evaluation process his analysis and determination of "similar fault."  *Tr. at 26-44*.  He began by reviewing Hynek's testimony at the 2005 hearing, which lead to the ALJ's favorable decision in 2005.  *Tr. at 26-29*.  The ALJ then discussed the evidence that provided a basis for his finding of "similar fault."  *Tr. at 29-36*.  That evidence included: (1) statements provided by Hynek's neighbors (*Tr. at 29-30*); (2) surveillance reports and video from the Office of the Inspector General [OIG] (*Tr. at 30-31*); (3) Hynek's written statement and the accompanying memorandum of interview dated June 29, 2007 (*Tr. at 31-33*); and (4) Hynek's testimony at the 2009 hearing (*Tr. at 33-36*).  The ALJ also discussed Hynek's objections to the investigative evidence and the 2009 hearing testimony.  *Tr. at 36-39*.  The ALJ then determined that, by a preponderance of the evidence, "similar fault" was involved in some of the evidence Hynek provided for the ALJ's 2005 favorable determination.  *Tr. at 43-44*.

The ALJ enumerated ten pieces of evidence that had to be disregarded – pursuant to 42 U.S.C. §§ 405(u) and 1383(f), 20 C.F.R. §§ 404.988(A)(c)(1) and 416.1488(c), and SSR 00-2p – because they were

9

tainted by "similar fault." *Tr. at 39*-44.  That evidence included testimony Hynek gave at the 2005 hearing, statements from Hynek's Personal Data Questionnaire, and statements in Hynek's initial disability report.  *Tr. at 40.*  Citing SSR 00-2p, the ALJ also found that Hynek's testimony about his back, hip, shoulder, arm, and foot pain were no longer credible, after the "similar fault" finding.  *Tr. at 40-41.*

The ALJ cited several specific reasons for disregarding the evidence, including: statements by Mr. and Mrs. Guerin and the Perros (Hynek's neighbors) (*Tr. at 41*); videotapes, memoranda, and reports from the investigation by OIG (*Tr. at 41-42*); Hynek's written statement (*Tr. at 42*); and Hynek's testimony at the 2009 hearing (*Tr. at 42-43*). The ALJ explained that because "similar fault" tainted the enumerated evidence, he had to disregard it.  *Tr. at 43-44.*

The ALJ then proceeded with the remaining sequential analysis to re-determine Hynek's eligibility for disability benefits, without using the disregarded evidence.  *Tr. 44-60.*  The ALJ found that none of Hynek's severe impairments, nor a combination thereof, met or medically equaled the listed impairments in 10 C.F.R. Part 404, Subpart P, Appendix 1.  *Tr. at 44-45.*  The ALJ also found that none of

10

Hynek's mental impairments, considered singly or in combination, met or medically equaled the criteria listed in 12.04 *Affective disorders*, or 12.06 *Anxiety disorders*, nor were the "paragraph B" criteria satisfied. *Tr. at 45*-47.

Next, the ALJ found that Hynek has the residual functional capacity to perform light work, as defined in 20 C.F.R. § 404.1567(b). *Tr. at 47.* The ALJ qualified this by finding that Hynek must "periodically alternate between sitting, standing, and walking" but was able to "occasionally balance, kneel, crouch, stoop and crawl, occasionally climb ramps and/or stairs, frequently, though not repetitively, handle, finger, and feel (fine manipulation)." *Id.* The ALJ also noted that Hynek should avoid "concentrated exposure to vibration, fumes, odors, dusts, gases, and other pulmonary irritants, and to hazards such as dangerous machinery and unprotected heights." *Id.* Finally, the ALJ qualified that due to Hynek's mental impairments, "he was limited to occasional interaction with smaller groups of people, to relatively low-stress jobs with minimal production requirements, to routine and simple work activity in terms of instruction and new learning, and to jobs that do not require more than minimal new

11

learning… ." *Id.*

The ALJ discussed the basis for this determination, including Hynek's symptoms, the objective medical evidence, opinion evidence, and the evidence provided by the OIG investigation. *Tr. at 47-58*. The ALJ noted that he did not rely on any of the disregarded evidence to make the determination. *Tr. at 58.*

After concluding that Hynek was unable to perform past relevant work, the ALJ reviewed the evidence from the vocational expert (*Tr. at 58*-59) and concluded that "considering the claimant's age, education, work experience, and residual functional capacity [RFC], the claimant was capable of making a successful adjustment to other work that existed in the national economy" and so a finding of "not disabled" was appropriate for the relevant period from October 14, 2003, to May 2, 2005. *Tr. at 59-60.*

## V.    THE PARTIES' ARGUMENTS

### A.    Hynek's Arguments

Hynek makes five arguments.  Hynek first argues that the ALJ and the SSA failed to give him adequate notice of the reasons that the favorable 2005 decision was reopened. *Court Doc. 21* at 6-8; *Court Doc.*

12

*30* at 4-5.  Hynek maintains that the SSA is required to provide notice of the "specific rationale" for reopening, citing *Wyatt v. Barnhart*, 349 F.3d 983 (7th Cir. 2003), for support.  *Court Doc. 21 at 6-8 Court Doc. 30 at 4-5.*  Hynek points out that the notice letter, referred to by the ALJ and dated June 30, 2008, is absent from the record, and he argues that adequate notice cannot be established without it.  *Court Doc. 21 at 6-8 Court Doc. 30 at 4-5.*

Second, Hynek argues that this Court can review the ALJ's decision to reopen (*Court Doc. 30* at 2-3) and that the ALJ's decision to reopen was improper.  *Court Doc. 21* at 6-8; *Court Doc. 30* at 4-11. Hynek asserts that the ALJ's decision to reopen was based on evidence that came after the 2005 decision, and therefore should not have been considered under *Wyatt.*  349 F.3d 983.  *Court Doc. 21* at 8.

Third, Hynek argues, as part of his claim that the decision to reopen was improper, that the ALJ's finding of "similar fault" was not supported by a preponderance of the evidence, as required by SSR 00-2p.  *Court Doc. 21* at 8-18; *Court Doc. 30* at 4-6.  Hynek maintains that the ALJ erroneously relied on the video tapes, statements from neighbors, and Hynek's own statements to make the determination,

13

none of which actually supports his finding.  *Court Doc. 21* at 8-18;

*Court Doc.*   Hynek further claims that the ten pieces of evidence

disregarded by the ALJ were not shown by a preponderance of the

evidence to have been obtained by "similar fault."  *Court Doc. 21* at 18-

20; *Court Doc. 30* at 10-11.  He argues that the ALJ failed to give the

specific reasons for disregarding the evidence that he was required to

give by SSR 00-2p.  *Court Doc. 21* at 18; *Court Doc. 30* at 10.

Fourth, Hynek argues that there is not substantial evidence to

support the ALJ's finding that Hynek is not disabled.  *Court Doc. 21* at

20-23; *Court Doc. 30* at 11-14.  Hynek maintains that the ALJ's

favorable 2005 decision is entitled to *res judicata* preclusive effect in

subsequent proceedings.  *Court Doc. 21* at 20-21; *Court Doc. 30* at 11-13.

 Relying on *Patti v. Sachewiker,* 699 F.2d 582 (9th Cir. 1982), Hynek

asserts that because of the prior favorable decision, the burden shifts to

the Commissioner to prove that there has been a change in Hynek's

condition.  *Court Doc. 21* at 20-21; *Court Doc. 30* at 11.  Hynek argues

that the Commissioner has not met this burden, because the medical

expert in 2009 improperly re-interpreted the original evidence and

because Hynek's mental health conditions have remained unchanged.

14

*Court Doc. 21* at 20-23; *Court Doc. 30* at 11-14.

Finally, Hynek asserts that the Commissioner continues to deprive him of his full right to an appeal, because the administrative file remains incomplete. *Court Doc. 21* at 23-25; *Court Doc. 30* at 14. Hynek claims that the notice letter from the ALJ, Hynek's written objections to the investigative material, and the ALJ's 2005 decision are missing from the file.[1] *Court Doc. 21* at 24-25; *Court Doc. 30* at 14. Hynek argues that without these documents, the Commissioner has failed to meet his burden to provide a complete transcript and has deprived Hynek of a meaningful chance to have the ALJ's actions fully reviewed. *Court Doc. 21* at 25.

### B.    The Commissioner's Arguments

The Commissioner makes three arguments. First, the Commissioner argues that this Court does not have jurisdiction to review the Commissioner's decision to reopen Hynek's 2005 favorable decision. *Court Doc. 28* at 2-7.  Citing *Califano v. Sanders,* 430 U.S. 99,

---

[1] Hynek also claimed that the surveillance videos were missing from the file, but those were filed by the Commissioner between Hynek's motion and his reply brief. *Court Doc. 24.*

15

107-108 (1977), the Commissioner argues that this Court can only review the ALJ's decision concerning whether and what evidence was tainted by "similar fault," and whether Hynek is disabled – not the ALJ's discretionary decision that the case should be reopened because of a suspicion of "similar fault." *Court Doc. 28* at 4-5. The Commissioner maintains that because the decision to reopen is discretionary it is not a reviewable "final decision." *Id.* at 6.

Second, the Commissioner argues that the ALJ's decision that certain evidence was tainted by similar fault was reasonable. *Id.* at 7-12. As part of this argument, the Commissioner asserts that it was reasonable for the ALJ to believe Hynek's signed confession, and that it was reasonable for the ALJ to connect Hynek's incorrect and incomplete statements to particular pieces of evidence that the ALJ found were tainted by similar fault. *Id.*

Third, the Commissioner argues that substantial evidence supported the ALJ's finding that Hynek was not disabled. *Court Doc. 28* at 13-18. As part of this argument, the Commissioner maintains that the 2005 decision is not entitled to preclusive effect. *Court Doc. 28* at 14-16. The Commissioner claims that *res judicata*, while sometimes

16

applied to administrative determinations in the Ninth Circuit, does not apply to *re*determinations of initial cases, such as Mr. Hynek's. *Id.*

The Commissioner maintains that, even if *res judicata* applies, the evidence and circumstances related to the reopening of Hynek's case were sufficiently changed from the initial determination for the prior finding to have no preclusive effect. *Court Doc. 28* at 16-18. The Commissioner points to Dr. Veraldi's changed opinion and Hynek's own admissions for support. *Id.* The Commissioner also argues that various medical findings and opinions within the record support the ALJ's finding that Hynek is not disabled. *Court Doc. 28* at 17-18.

## VI.   DISCUSSION

The primary issues before the Court are whether substantial evidence supports the ALJ's decision, and whether the ALJ's decision is free of legal error. Applying controlling Ninth Circuit authority, the Court concludes that the ALJ's decision is based on substantial evidence and contains no legal error. For the reasons set forth below, the Court finds Hynek's arguments unpersuasive.

### A.   The Court can proceed on the current record.

Hynek raises two threshold issues: the adequacy of the notice he

17

was given that his case would be reopened (*Court Doc. 21* at 6-8*; Court Doc. 30* at 4-5*)* and the incomplete nature of the record provided by the Commissioner (*Court Doc. 21* at 23-25; *Court Doc. 30* at 14).  The Court finds neither issue dispositive, for the following reasons.[2]

First, Hynek relies heavily on *Wyatt v. Barnhart* to assert that he is entitled to notice containing the "specific rationale" for reopening his case.  349 F.3d 983 (7th Cir. 2003); *Court Doc. 21* at 6-8; *Court Doc. 30* at 4-5.  There are several problems with this reliance, however.  First, *Wyatt* is a Seventh Circuit case, and Hynek provides no similar authority from the Ninth Circuit.

Second, the Commissioner in *Wyatt* defended the decision to reopen based on evidence that was not before the ALJ when the case was reopened.  349 F.3d at 984.  Here, it is clear that the decision to reopen was based on evidence the ALJ possessed when he reopened

_____

[2] For purposes of this discussion, the Court concludes that it does have jurisdiction to review Hynek's arguments regarding the decision to reopen his case.  *See Mines v. Sullivan,* 981 F.2d 1068, 1069-71 (9th Cir. 1992); *Slone v. Sec'y of Health & Human Services*, 825 F.2d 1081, 1083-84 (6th Cir. 1987); *Cieutat v. Bowen*, 824 F.2d 348, 358 n.5 (5th Cir. 1987).

Hynek's case.  In his introductory remarks at the 2009 hearing, the ALJ noted that the purpose of the hearing was to determine whether "there was any type of fraud or something called similar fault that was committed on your part", further noting "I believe at this point you've had the opportunity to see all the information or at least that's been made available" *(Tr. 1388)*, including the video surveillance tapes, the statements from Hynek's neighbors, and Hynek's statement.  *Tr. 1392*. When queried if she had any comments about the ALJ's proposed procedures, Hynek's attorney raised no issues regarding the notice Hynek received or Hynek's ability to prepare for the hearing.  *Id. at 1392-93*.[3]

 Additionally, in *Wyatt* the Court found that there was no evidence that Wyatt did anything wrong.  Here, there is evidence, albeit

---

[3] The Court also notes that, although the letter is not part of the record, the ALJ stated in his opinion that a letter, dated June 30, 2008, nearly one year before the 2009 hearing, was mailed to Hynek and explained that "new evidence received from the Department of Veterans Affairs Office of Inspector General and the Social Security Administration's Office of Inspector General raised serious issues that might affect the previously favorable decision and the claimant's entitlement to Social Security disability benefits."  *Tr. at 21*.

19

disputed,  from the VA and SSA investigations suggesting that Hynek

misrepresented his capabilities.

Third, *Wyatt* cites only the SSA Program Operations Manual

System [POMS] for its authority that the ALJ must provide a statement

of "specific rationale" for reopening.  349 F.3d at 984.  Although agency

statements or manuals can be considered as persuasive authority, they

do not impose judicially enforceable duties.  *Conde-Rodriguez v. Adler,*

2010 WL 2353522, * 10 (E.D. Cal. 2010) (*citing Warre v. Commissioner

of Social Sec. Admin.,* 439 F.3d 1001, 1005 (9th Cir.2006); *Lowry v.

Barnhart,* 329 F.3d 1019, 1023 (9th Cir.2003)).

The only other law that Hynek has provided, for his proposition

that a "specific rationale" must be provided to reopen, is a regulation

that governs the Medicare Part B program.  *Court Doc. 21* at 6 (*citing

42 C.F.R. § 405.842).  Hynek's brief does not explain how that

regulation applies to his case.  Hynek's argument that the ALJ failed to

give notice containing a "specific rationale" for reopening is, therefore,

unpersuasive.

The other piece of evidence missing from the record provided by the Commissioner is the ALJ's 2005 decision.  Hynek acknowledges, however, that the ALJ had the 2005 decision at the time he made his 2009 decision.  *Court Doc. 21* at 25, *citing Tr. 21, 29-33, and 41-43*.  The ALJ's 2005 decision is discussed at some length in his 2009 decision. The ALJ's written decision therefore effectively summarizes the missing 2005 decision.  *See Andres v. Bowen,* 870 F.2d 453, 455 (8th Cir. 1989). Also, the Court has the complete transcript of the 2005 hearing.  *Tr. at 1320-1385.*  So long as the missing document does not preclude effective judicial review, then the court may proceed without it.  *See Varney v. Secretary of Health & Human Services,* 846 F.2d 581, 583 (9th Cir. 1988) (*superseded on other grounds, Bunnell v. Sullivan,* 912 F.2d 1149, 1154 (9th Cir. 1990)).  *See also* Carolyn A. Kubischek, <u>Social Security Disability: Law and Procedure in Federal Court</u>, § 9:21 *Missing or illegible portions of the record*, p. 523 (1994).   Most importantly, it is the 2009 decision that is before this Court for review, not the 2005 decision.    For these reasons, the Court finds that an incomplete record does not interfere with comprehension of the evidence or the ALJ's

21

decision to an extent that would hinder fair review.  Remand is therefore not warranted on the ground that the record is incomplete and the Court can proceed to a substantive review of the ALJ's ultimate findings.

> **B.**    **Substantial evidence supports the ALJ's finding of "similar fault" and ALJ's rejection of specific pieces of evidence.**

Although the ALJ must make his decision based on a preponderance of the evidence, *see* SSR 00-2p, this Court may set aside an ALJ's decision only where it is not supported by substantial evidence or where the decision is based on legal error.  *Ryan*, 528 F.3d at 1198; 42 U.S.C. § 405(g).  The ALJ's thorough and detailed decision included a discussion of relevant medical evidence, opinions, and testimony.  *Tr. at 21-60*.  The ALJ prefaced this discussion by noting his "careful consideration of the all the evidence." *Tr. at 22*.  While this declaration is not proof that the ALJ considered all the available evidence, it does demonstrate his awareness of his obligation to do so.

In evaluating Hynek's claims, the ALJ was required to "make fairly detailed findings in support" of his decision that would "permit

22

courts to review those decisions intelligently." *Vincent v. Heckler*, 739 F.2d 1393, 1394 (9th Cir. 1984) (citation omitted).  In doing so, an "ALJ does not need to discuss every piece of evidence" and "is not required to discuss evidence that is neither significant nor probative[.]" *Howard ex rel. Wolff v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003)(internal quotations and citations omitted).

A reviewing court "must consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum of supporting evidence.'" *Orn v. Astrue,* 495 F.3d 625, 630 (9th Cir. 2007) (*citing Robins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)).  But a court reviews "only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." *Id.*

Here, the ALJ reviewed the record and thoroughly explained his rationale for a "similar fault" finding. *Tr. at 26-44.* The ALJ's decision reviewed the substantial evidence that informed and supported his conclusion including:  Hynek's testimony at the 2005 hearing (*Tr. at 26-29*); the statements of Hynek's neighbors (*Tr. at 29-30*); surveillance

videos (*Tr. at 30-31*); Hynek's written statement (*Tr. at 31-33*); and Hynek's testimony at the 2009 hearing (*Tr. at 33-36*). The ALJ did not ignore Hynek's objections to the evidence, but discussed and dismissed them each in turn. *Tr. at 36-39.* The Court has reviewed all the evidence cited by the ALJ. The Court finds that the evidence supports the ALJ's conclusion that "similar fault" was involved in Hynek's 2005 application for benefits. This Court finds, therefore, that the ALJ's finding of "similar fault" is supported by substantial evidence.

For the reasons stated above, the Court also finds that the ALJ's determination that ten specific pieces of evidence were tainted by "similar fault" is supported by substantial evidence. *Tr. at 39*-44. The evidence cited by the ALJ included statements by Mr. and Mrs. Guerin and the Perros (*Tr. at 41*), videotapes, memorandums, and reports from the investigation by OIG (*Tr. at 41-42*), Hynek's written statement (*Tr. at 42*), and Hynek's testimony at the 2009 hearing (*Tr. at 42-43*). The Court has also reviewed all of that evidence and finds that it supports the ALJ's determination. The ALJ's finding that "similar fault" was involved in the enumerated evidence, and his decision to disregard it,

24

was therefore supported by substantial evidence.

Beyond the ten listed pieces of evidence, the ALJ's finding that Hynek's testimony about his back, hip, shoulder, arm, and foot pain was no longer credible after the "similar fault" finding was also supported by substantial evidence. *Tr. at 40-41.* SSR 00-2p explains that: "[a] 'similar fault' finding concerning a material fact may constitute evidence to be considered in determining whether there is reason to believe that 'similar fault' was involved with respect to other evidence provided by the same source, and may justify disregarding other evidence from that source." SSR 00-2p, *General*, ¶ 5. Thus, SSR 00-2p contemplates that a "similar fault" finding may adversely impact the credibility of a claimant's testimony on the whole.

Additionally, an ALJ may, after engaging in the appropriate analysis, reject a claimant's subjective testimony about the severity of symptoms, although he must cite specific, clear, and convincing reasons for doing so. *Lockwood v. Comm'r Soc. Sec.,397 Fed. Appx. 288 (9th Cir. 2010).* To assess credibility in this manner, the ALJ may consider ordinary evaluation techniques, including the claimant's daily

activities. *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996).

However, "[g]eneral findings are insufficient; rather, the ALJ must

identify what testimony is not credible and what evidence undermines

the claimant's complaint." *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir.

1998) (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)).

Inconsistencies in testimony may also be factored in such an

assessment. *Orn v. Astrue*, 495 F.3d 625, 636 (9th Cir. 2007) (citing

*Fair*, 885 F.2d at 603).

Here, the ALJ gave specific, clear, and convincing reasons for

finding that Hynek's testimony was not entirely credible, based on the

"similar fault" finding and other factors. *Tr. at 40-44.* The ALJ

highlighted Hynek's inconsistent statements and discussed at length

inconsistencies between the medical evidence, surveillance,

investigative evidence, and Hynek's testimony. *Tr. at 40-58.* The Court

has reviewed the evidence cited by the ALJ and concludes that the

ALJ's rejection of Hynek's testimony about his back, hip, shoulder, arm,

and foot pain was therefore supported by substantial evidence. Thus,

all of the ALJ's findings concerning "similar fault", the evidence tainted

26

by it, and his rejection of that evidence, are supported by substantial evidence and free of legal error.

### C.   There is substantial evidence to support the ALJ's finding that Hynek was not disabled.

The parties disagree about whether the ALJ's favorable decision awarding Hynek benefits in 2005 should be afforded preclusive effect under principles of *res judicata*.  *Court Doc. 21* at 21-23; *Court Doc. 28* at 14-16; *Court Doc. 30* at 11-14.  Although the doctrine of *res judicata* applies to administrative decisions, it is applied "less rigidly" in administrative proceedings than in judicial proceedings.  *Chavez,* 844 F.2d at 693.  For example, *res judicata* may be inappropriate where a party has presented new facts or new evidence to demonstrate that a prior determination of disability may have been incorrect.  *Id.; see also Gregory v. Bowen*, 844 F.2d 664, 666 (9th Cir. 1988) (citing *Taylor v. Heckler*, 765 F.2d 872, 876 (9th Cir. 1985)).  *Res judicata* is also inappropriate where, as here, there is re-determination of benefits, under § 205(u) of the Social Security Act (42 U.S.C. § 405(u)(1)(a)), rather than an attack by subsequent litigation on a prior, final

determination.[4]  *See, e.g., Lyle v. Sec'y of Health and Human Serv.*, 700 F.2d 566 (9th Cir. 1983).

Both of the statutes upon which this redetermination is based indicate that *res judicata* does not apply here.  42 U.S.C. § 405(u) states that "[t]he Commissioner of Social Security shall immediately redetermine the entitlement of individuals to monthly insurance benefits under this subchapter if there is reason to believe that fraud or similar fault was involved in the application of the individual for such benefits."  42 U.S.C. § 405(u)(1)(A) (2012).  The statute thus makes no mention of res judicata and indicates by its very nature that the original decision in question be re-examined, without preclusive effect.

Similarly, 20 C.F.R. § 404.998(c) allows an ALJ to reopen "at any time if … it was obtained by fraud or similar fault."  That regulation

---

[4] Hynek relies heavily on *Patti v. Schweiker*, 669 F.2d 582 (9th Cir. 1982) for the proposition that *res judicata* applies even to a redetermination.  *Court Doc. 30* at 12.  That case, however, has been superseded by statute.  *See* 42 U.S.C. § 1382c(a)(4)  ("Any determination made under this paragraph shall be made on the basis of the weight of the evidence and on a neutral basis with regard to the individual's condition, without any initial inference as to the presence or absence of disability being drawn from the fact that the individual has previously been determined to be disabled").  *See Warren v. Bowen,* 804 F.2d 1120, 1121 (9th Cir. 1986).

makes no mention of deference to a prior determination, and indicates by its very existence that an original determination can be revaluated where "similar fault" is involved.  The Court finds, therefore, that *res judicata* does not apply to the favorable 2005 decision.

The remaining question is whether the ALJ's 2009 determination is supported by substantial evidence and free of legal error.  Just as with the "similar fault" finding, this Court is limited to reviewing the ALJ's disability determination using only the evidence upon which the ALJ relied.  *Orn,* 495 F.3d at 630.  The ALJ discussed Hynek's physical symptoms that could be reasonably accepted as consistent with the objective medical evidence, citing extensively to the medical record.  *Tr. at 47-51; 54-57.*  The ALJ also discussed the mental impairments Hynek alleged, and the medical evidence and opinions concerning them.  *Tr. at 51-55.*  The ALJ compared at length the opinions of various mental health professionals – both doctors and counselors – and reviewed their various opinions regarding Hynek's mental conditions.  *Tr. at 51-54.*

In his determination, the ALJ referenced the records, findings, and opinions of six different doctors: Dr. Dietz (*Tr. at 48*), Dr. Wendt (*Tr. at 49*), Dr. Whitworth (*Tr. at 51*), Dr. Gumm (*Tr. at 52*), Dr. Veraldi

29

(*Tr. T 52*), and Dr. Teal (*Tr. at 55*).  Relying on all of this evidence from the record, the ALJ found that Hynek is capable of light, unskilled work, and therefore is ineligible for adult disability benefits.  *Tr. at 44-58*.

The Court has reviewed these medical records cited by the ALJ. The Court finds that they support the ALJ's conclusion that Hynek is not disabled.  This Court finds, therefore, that the ALJ's decision is supported by substantial evidence.

## VII.    <u>CONCLUSION</u>

The ALJ's decision was based on substantial evidence from the record and contained no legal error.  For these reasons,

**IT IS ORDERED** that:

(1)    The Commissioner's motion for summary judgment (*Court Doc. 27*) is GRANTED; and

(2)    Hynek's motion for summary judgment (*Court Doc. 13*) is DENIED.

The Clerk of Court is directed to enter judgment accordingly.

DATED this 13th day of February, 2012.


/s/ Carolyn S. Ostby
United States Magistrate Judge